**MATTHEW et al. v. MONCRIEF et al.**

No. 8023.

United States Court of Appeals for the
District of Columbia.

Decided Feb. 8, 1943.

Mr. James Sherier, of Washington, D. C., submitted the case on the brief for appellants.

Messrs. Walter M. Bastian and Albert F. Adams, both of Washington, D. C., submitted the case on the brief for appellees.

Before GRONER, Chief Justice, and MILLER and VINSON, Associate Justices.

VINSON, Associate Justice.

This appeal pertains to a survivor's right in the proceeds of a joint savings account. The appellants, as brothers and sisters and heirs-at-law of Mary J. Davidson, deceased, instituted a suit to establish a trust in certain funds on deposit with the appellee Perpetual Building Association in the name of the appellee Laura F. Moncrief, surviving owner of a joint savings account in the name of herself and the decedent. The appellees filed a motion to dismiss the complaint alleging, inter alia, that it contained no allegations entitling the appellants to relief. It is for us to determine the validity of the order of the District Court dismissing the complaint.

The complaint, in substance, was as follows: For some years, Mary J. Davidson had a large account on deposit with the Perpetual Building Association in the District of Columbia. On June 16, 1937, with an account approximating $7,260.00, she determined that her health would no longer permit her accustomed visits to the Building Association to draw on this fund. In consequence of her condition, she deemed it necessary to make provision for the periodic withdrawal of these funds by someone else. Having confidence in her sister Laura, the appellee, she selected her for this purpose, and the two women went together to the office of the Building Association. The Building Association supplied a printed form of joint account which was executed by each of them. The form contained a provision that Mary's account should belong to both Mary and appellee *as joint owners*, subject to the order of either, *with the balance at the death of either to the survivor*. Although *both women signed the instrument*, it was understood between them at the time that the arrangement was only as a convenience to Mary, and that the appellee was to make withdrawals only as and when requested by Mary, and nothing more. Appellee so understood the purpose of the agreement and agreed to respect and perform Mary's wishes; she realized that the words of the joint account *did not express the true intention of the parties*. About six weeks thereafter Mary died. Her estate was duly probated in the District of Columbia. *The account was not disposed of by her will.* Eleven days after Mary's death, appellee converted the fund to her own use by having the account transferred to her name. As heirs-at-law of Mary, appellants contend that they are entitled to an equitable interest in the fund, which appellee has refused to share with them.

We do not consider that the allegations tending to indicate an incapacity in Mary J. Davidson to execute the joint account

agreement are sufficient to present a valid issue.

The issue may be stated in this way: When two persons, whom we shall call the donor and the donee-survivor (whether or not their relationship always justifies this terminology), *both* sign a deposit card which purports to create a joint account subject to the demands of either, and upon the death of either to the survivor, may the written intention of the parties as expressed in that instrument be altered or destroyed by parol evidence except upon the grounds of fraud or mistake?

Although the donee-survivor's rights have been the subject of considerable controversy and conflicting decisions in other jurisdictions, the precise question has not been previously presented to this court.[1] We feel compelled, therefore, to align the District of Columbia with those jurisdictions whose ratio decidendi we consider more consonant with logic, sound principle, and good public policy.

In giving careful study to a rather complete list of decisions, a reflective, analytical, and reconciliatory approach has convinced us that the lack of judicial harmony is largely superficial. This specious inconsistency results from a failure to differentiate the decisions factually. We find the following inquiries essential to a proper analysis:

I. Was the account created by the mere addition of the name of the donee to the deposit card, or was there also included written language which expressed an intention to create a joint account;

II. Was the deposit card or agreement establishing the joint account signed by the donor only, or by both donor and donee;

III. Did the instrument contain a survivorship clause;

IV. Were the donee-survivor's rights attacked on the basis (1) that the necessary mechanics to effectuate a completed gift were lacking, or (2) that there was no *intention* in the donor to create a joint interest or a gift, *i.e.,* that the arrangement was merely one of convenience.

We have found eleven cases where the right of the donor's personal representative[2] to the fund has been upheld to the exclusion of the donee-survivor for the reason that the account was made only as an arrangement of convenience, as is the principal contention of the appellants here. Applying the criteria of the preceding paragraph, however, we note that in only one of these eleven decisions was the deposit card or the agreement establishing the joint account signed by the donee-survivor.[3] In this instance, the card contained neither language of joint account nor a survivorship clause. Ten decisions were concerned with deposit cards or arrangements for joint control which had been signed *only by the donor.* In seven of these ten cases, the accounts were created by the mere addition of the name of the donee to the account *without the inclusion of any written words indicating a purpose to institute a joint account;*[4] only one deposit card contained a clause of survivorship.[5] Of the three remaining cases where the deposit card was signed by the donor only, the deposit cards *did* contain language of joint

---

[1] In Garrett v. Keister, 1932, 61 App. D.C. 25, 56 F.2d 909, the survivor's rights were attacked upon the basis of fraud. In Quigley v. Quigley, 1936, 66 App.D.C. 134, 85 F.2d 300, there was merely a "bald averment" that the joint account agreement did not express the true intention of the donor.

[2] In one instance, Bradford v. Eastman, 1918, 229 Mass. 499, 118 N.E. 879, the validity of the instrument was successfully challenged by the donor in his lifetime, but the court did not rely upon this fact. The donor had given the passbook to the donee upon the latter's promise to return the same when requested. This circumstance was considered to have weakened the "donee's" position.

[3] Commercial Trust Co. v. White, 1926, 99 N.J.Eq. 119, 132 A. 761 (Lincoln Trust Company and Hoboken Trust Company

accounts. In the Lincoln Trust Company account a survivorship provision was stamped on the passbook cover, but the court expressly held this not to be a part of the contract.).

[4] Denigan v. Hibernia Savings & Loan Soc., 1899, 127 Cal. 137, 59 P. 389; Perry v. Leveroni, 1925, 252 Mass. 390, 147 N.E. 826 (Commonwealth-Atlantic National Bank and Union Institution for Savings accounts); Bradford v. Eastman, 1918, 229 Mass. 499, 118 N.E. 879; Taylor v. Coriell, 1904, 66 N.J.Eq. 262, 57 A. 810; Skillman v. Wiegand, 1896, 54 N.J.Eq. 198, 33 A. 929; In re Bolin, 1892, 136 N.Y. 177, 32 N.E. 626; Mader v. Stemler, 1935, 319 Pa. 374, 179 A. 719 (Central Trust Company account).

[5] Perry v. Leveroni, 1925, 252 Mass. 390, 147 N.E. 826.

account, but one case is obviously distinguishable, as the bequest therein was testamentary and ineffective to pass any interest to the donee.[6] The remaining two cases reflect the law of a single jurisdiction, Maryland, which might be listed as an exception. In upholding the right of the donor's representative, however, the court was confronted, in both these cases, with extenuating circumstances such as the complete retention of the passbook by the donor in his lifetime, which was considered by the court as controlling, and a consistent practice in the donor, in creating his many accounts, to add an additional name for convenience,[7] or the fact that the donor had previously erased the name of another, whom he had added as joint owner, to substitute the name of the donee.[8]

We feel, therefore, that these eleven authorities, while appearing to support the appellants' arguments, are really distinguishable on their facts from the instant case. The admission of parol evidence under the circumstances present in those decisions may very well have been permissible. The mere appending of the name of the donee to the account, without words expressing or showing an intention to create in that donee a joint interest or ownership, may not be an act of that unequivocal character which excludes extrinsic explanation. The donor may not have expressed his intention with that conclusiveness and unambiguity which preclude parol provisioning.

On the other side of the ledger, we have found twenty cases [9] which have upheld the right of the donee-survivor to the fund. A generalization regarding the facts upon which these decisions were based stands in marked contrast with the factual description of the cases in the opposing column. Written words showing an intention to create a joint account were present in all but three of the cases,[10] and a survivorship clause was included in all but five of the deposit arrangements.[11] In only five of these twenty cases did both the donor and donee fail to sign the deposit card or the agree-

---

[6] Grady v. Sheehan, 1917, 256 Pa. 377, 100 A. 950.

[7] Gorman v. Gorman, 1898, 87 Md. 338, 39 A. 1038.

[8] Taylor v. Henry, 1878, 48 Md. 550, 30 Am.Rep. 486.

[9] Hill v. Badeljy, 1930, 107 Cal.App. 598, 290 P. 637, with the aid of a statute, although the precise question was decided previously on common law principles in Kennedy v. Kennedy, 1915, 169 Cal. 287, 146 P. 647, Ann.Cas.1916D, 515, and In re Gurnsey's Estate, 1918, 177 Cal. 211, 170 P. 402; Erwin v. Felter, 1918, 283 Ill. 36, 119 N.E. 926, L.R.A.1918E, 776; Rockefeller v. Davenport, 1931, 277 Mass. 105, 177 N.E. 856; Perry v. Leveroni, 1925, 252 Mass. 390, 147 N.E. 826; Chippendale v. North Adams Savings Bank, 1916, 222 Mass. 499, 111 N.E. 371 (two deposits created under different circumstances concerned); Commonwealth Trust Co. v. Du Montimer, 1916, 193 Mo. 290, 183 S.W. 1137; Commercial Trust Co. v. White, 1926, 99 N.J.Eq. 119, 132 A. 761 (two types of deposits created under different circumstances concerned); Commonwealth Trust Co. v. Grobel, 1921, 93 N.J.Eq. 78, 114 A. 353; New Jersey Title Guaranty & Trust Co. v. Archibald, 1919, 91 N.J.Eq. 82, 108 A. 434; Cleveland Trust Co. v. Scobie, 1926, 114 Ohio St. 241, 151 N.E. 373, 48 A.L.R. 182; In re Edwards' Estate, 1932, 140 Or. 431, 14 P.2d 274; In re Culhane's Estate, 1938, 133 Pa.Super. 339, 2 A.2d 567, affirmed 1939, 334 Pa. 124, 5 A.2d 377; Mader v. Stemler, 1935, 319 Pa. 374, 179 A. 719 (Camp Curtin Trust Company account); Holt v. Bayles, 1934, 85 Utah 364, 39 P.2d 715; Deal's Adm'r v. Merchants' & Mechanics' Savings Bank, 1917, 120 Va. 297, 91 S.E. 135, L.R.A.1917C, 548; Wisner v. Wisner, 1918, 82 W.Va. 9, 95 S.E. 802.

The explanation of the appearance of several of these citations as authority for the opposite holding is that in those decisions more than one account established under different circumstances was involved.

[10] Perry v. Leveroni, 1925, 252 Mass. 390, 147 N.E. 826 (County Savings Bank account); Chippendale v. North Adams Savings Bank, 1916, 222 Mass. 499, 111 N.E. 371 (North Adams Savings Bank account); Deal's Adm'r v. Merchants' & Mechanics' Savings Bank, 1917, 120 Va. 297, 91 S.E. 135, L.R.A.1917C, 548.

[11] In re Gurnsey's Estate, 1918, 177 Cal. 211, 170 P. 402; Kennedy v. Kennedy, 1915, 169 Cal. 287, 146 P. 647, Ann. Cas.1915D, 515; Chippendale v. North Adams Savings Bank, 1916, 222 Mass. 499, 111 N.E. 371 (North Adams Savings Bank account); Commercial Trust Co. v. White, 1926, 99 N.J.Eq. 119, 132 A. 761 (Lincoln Trust Company and Hoboken Trust Company accounts); Commonwealth Trust Co. v. Grobel, 1921, 93 N.J. Eq. 78, 114 A. 353.

648

ment establishing the joint account.[12] We think it highly significant that we could discover no case wherein *both parties had signed an instrument which contained language of joint account and a survivorship clause,* where the right of the donee-survivor to the fund was denied. In fact, to repeat ourselves, we have been able to find but one case in which both parties had signed the agreement of deposit where the right of the donee-survivor has been denied, and in that instance, the deposit card contained neither a survivorship clause nor words of joint account.[13] Thus, while the existence of a deposit card with language of joint account, *and* including a survivorship clause, *and* signed by both donor and donee, is not essential in order to obtain a ruling favorable to the donee-survivor, the presence of all of these factors makes that outcome more certain, just as the absence of one or more of them may render the donor's acts less equivocal and subject his written purpose to parol modification.

Although the allegation that the account might have been established only as an arrangement of convenience was considered in but three[14] of the twenty cases holding for the donee-survivor, the forceful and final language employed in the opinions of the other cases made the absence of any such specific allegation immaterial. In many of these decisions, the expressed rationale has been that the deposit card is a contract or novation between the bank and both depositors, and that the donee-survivor takes not only as donee, but under the binding agreement negotiated between the bank and himself.[15] In other cases the transfer has been treated simply as a gift.[16] Under either view, however, the courts have agreed that the question of the intention of the donor is material, but they have held that when such intention is expressed in a written instrument which says, in plain terms, that the deposit is the joint property of both, and that it is to go upon the death of either to the survivor, such an expression of intention is conclusive, and preclusive of all parol contradiction, except upon the grounds of fraud or mistake.[17] We believe this to be a proper application of the parol evidence rule.

We have not attempted to clarify all the cases completely or to reconcile every decision. We do feel, however, that when the cases are differentiated upon the suggested bases, a practically perfect pattern is produced, and that our conclusion is consistent with the overwhelming trend of the

[12] Erwin v. Felter, 1918, 283 Ill. 36, 119 N.E. 926, L.R.A.1918E, 776; Rockefeller v. Davenport, 1931, 277 Mass. 105, 177 N.E. 856; Chippendale v. North Adams Savings Bank, 1916, 222 Mass. 499, 111 N.E. 371; Deal's Adm'r v. Merchants' & Mechanics' Savings Bank, 1917, 120 Va. 297, 91 S.E. 135, L.R.A.1917C, 548; Wisner v. Wisner, 1918, 82 W.Va. 9, 95 S.E. 802.

[13] See note 3, supra.

[14] Commercial Trust Co. v. White, 1926, 99 N.J.Eq. 119, 132 A. 761 (all accounts except Lincoln Trust Company and Hoboken Trust Company); New Jersey Title Guaranty & Trust Co. v. Archibald, 1919, 91 N.J.Eq. 82, 108 A. 434; Holt v. Bayles, 1934, 85 Utah 364, 39 P.2d 715.

[15] Erwin v. Felter, 1918, 283 Ill. 36, 119 N.E. 926, L.R.A.1918E, 776; Rockefeller v. Davenport, 1931, 277 Mass. 105, 177 N.E. 856; Perry v. Leveroni, 1925, 252 Mass. 390, 147 N.E. 826; Chippendale v. North Adams Savings Bank, 1916, 222 Mass. 499, 111 N.E. 371; Commonwealth Trust Co. v. Grobel, 1921, 93 N.J. Eq. 78, 114 A. 353; New Jersey Title Guaranty & Trust Co. v. Archibald, 1919, 91 N.J.Eq. 82, 108 A. 434; Cleveland Trust Co. v. Scobie, 1926, 114 Ohio St. 241, 151 N.E. 373, 48 A.L.R. 182; In re

Edwards' Estate, 1932, 140 Or. 431, 14 P. 2d 274; Mader v. Stemler, 1935, 319 Pa. 374, 179 A. 719; Holt v. Bayles, 1934, 85 Utah 364, 39 P.2d 715; Deal's Adm'r v. Merchants' & Mechanics' Savings Bank, 1917, 120 Va. 297, 91 S.E. 135, L. R.A.1917C, 548; Wisner v. Wisner, 1918, 82 W.Va. 9, 95 S.E. 802.

[16] Kennedy v. Kennedy, 1915, 169 Cal. 287, 146 P. 647, Ann.Cas.1916D, 515; Commercial Trust Co. v. White, 1926, 99 N.J.Eq. 119, 132 A. 761 (all accounts except Lincoln Trust Company and Hoboken Trust Company); New Jersey Title Guaranty & Trust Co. v. Archibald, 1919, 91 N.J.Eq. 82, 108 A. 434; In re Culhane's Estate, 1938, 133 Pa.Super. 339, 2 A.2d 567, affirmed, 1939, 334 Pa. 124, 5 A.2d 377.

[17] Hill v. Badeljy, 1930, 107 Cal.App. 598, 290 P. 637 (with statutory assistance); Kennedy v. Kennedy, 1915, 169 Cal. 287, 146 P. 647, Ann.Cas.1916D, 515; Heiner v. Greenwich Savings Bank, 1922, 118 Misc. 326, 193 N.Y.S. 291 (with statutory assistance); In re Edwards' Estate, 1932, 140 Or. 431, 14 P.2d 274; In re Culhane's Estate, 1938, 133 Pa.Super. 339, 2 A.2d 567, affirmed 1939, 334 Pa. 124, 5 A.2d 377; Holt v. Bayles, 1934, 85 Utah 364, 39 P.2d 715.

decisions. The consistency of the courts in these cases is most strikingly demonstrated by a retabulation of the eleven cases which we discussed as representative of the authority for awarding the account to the donor's representative. Those cases, after the removal of the two Maryland decisions which we treated earlier as possible exceptions,[18] represent the law of but five states.[19] In each of these five states, however, the courts also have delivered decisions awarding the funds to the donee-survivor, either as regards other accounts involved in the same decision in which they determined that some of the accounts belonged to the donor's representative,[20] or in other cases.[21] Nor does this disclose an incongruous disposition of the cases by those jurisdictions. The courts were merely confronted with cases in which there were accounts established under circumstances which may be differentiated and classified upon the bases which we have formulated.

It may be illuminating to comment briefly upon those decisions where the courts have considered themselves obligated to rule both ways in the same case. In a situation where the courts are concerned with the same donor, and usually the same donee, and often with accounts established on the same day, it is not an overdrawn conclusion that, although the same formalities were not observed in the establishment of all the accounts, this merely reflected a variation in banking practice, and that the donor, nevertheless, intended the same effect to be attached to each transaction. It is significant, therefore, that the courts discriminate, and resolve the problem upon the bases of the language used and the parties signatory. In Perry v. Leveroni,[22] the Union Institution and Commonwealth-Atlantic account arrangements did not bear the signature of the donee-survivor; the

court awarded these accounts to the donor's representative. The County Savings account, however, did contain the donee's signature, and the court held that he was entitled to that fund. In Commercial Trust Co. v. White,[23] the Lincoln Trust and Hoboken Trust accounts contained no further expressions of the donor's intent than the simple conjunction of the two depositors' names, although both depositors were signatories. In the remaining seven accounts concerned, there were words of joint account and both depositors had signed. Only the latter accounts were held to belong to the donee-survivor. In Mader v. Stemler,[24] the Camp Curtin account contained neither language of joint account nor the donee-survivor's signature; in the Central Trust account each of these features was present. The court ruled that the former account was the property of the donor's representative and that the latter belonged to the donee-survivor. We wish to place especial emphasis upon the discriminations applied in these decisions.

The complaint shows that a contract was signed by both donor and donee with the Perpetual Building Association; that the words of the contract expressed a clear and unequivocal intention in the donor to make the donee a joint owner; and that a clause of survivorship was included in the instrument. The complaint does not allege fraud or mistake in the execution of the joint agreement. We cannot, under these circumstances, allow Mrs. Davidson's clearly written and plainly expressed purpose to be rewritten after her demise, or deprive the appellee of rights in a contract to which she was a party-signatory. Accordingly, we hold that the District Court rightly considered that the appellants' complaint did not state a cause of action.

Affirmed.

---

[18] See notes 7 and 8, supra.

[19] See notes 3, 4, 5, and 6, supra.

[20] See notes 22, 23, and 24, infra.

[21] *California:* Kennedy v. Kennedy, 1915, 169 Cal. 287, 146 P. 647, Ann.Cas. 1916D, 515; In re Gurnsey's Estate, 1918, 177 Cal. 211, 170 P. 402;

*Massachusetts:* Chippendale v. North Adams Savings Bank, 1916, 222 Mass. 499, 111 N.E. 371; Rockefeller v. Davenport, 1931, 277 Mass. 105, 177 N.E. 856;

*New Jersey:* Commonwealth Trust Co.

v. Grobel, 1921, 93 N.J.Eq. 78, 114 A. 353; New Jersey Title Guaranty & Trust Co. v. Archibald, 1919, 91 N.J. Eq. 82, 108 A. 434;

*New York:* Heiner v. Greenwich Savings Bank, 1922, 118 Misc. 326, 193 N. Y.S. 291 (with statutory assistance);

*Pennsylvania:* In re Culhane's Estate, 1938, 133 Pa.Super. 339, 2 A.2d 567, affirmed 1939, 334 Pa. 124, 5 A.2d 377.

[22] 1925, 252 Mass. 390, 147 N.E. 826.

[23] 1926, 99 N.J.Eq. 119, 132 A. 761.

[24] 1935, 319 Pa. 374, 179 A. 719.